UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
VINCENT RIEDEL, on behalf of          :     14 Civ. 7238 (JCF)
Himself, FLSA Collective              :
Plaintiffs and the Class,             :        MEMORANDUM
                                      :     AND   ORDER
              Plaintiff,              :
                                      :
    - against -                       :
                                      :
ACQUA ANCIEN BATH NEW YORK LLC,       :
d/b/a AIRE ANCIENT BATHS, and         :
ARMANDO PRADOS,                       :
                                      :
              Defendants.             :
- - - - - - - - - - - - - - - - - - -:

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 5/19/16

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

In this action seeking damages for violations of the Fair
Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and New
York Labor Law §§ 190-199a, 650-665 ("NYLL"), the parties jointly
seek (1) approval of a class under Rule 23 of the Federal Rules of
Civil Procedure and a nearly coterminous collective under section
216(b) of the FLSA; (2) preliminary approval of the proposed
settlement agreement; (3) appointment of class counsel and a class
administrator; and (4) approval of the proposed notice of the
settlement and proposed schedule going forward.[1]  The motion is
granted, with certain modifications to the proposed notice.

---

[1] On April 14, 2016, the parties consented to my jurisdiction
for all purposes pursuant to 28 U.S.C. § 636(c) and Rule 73 of the
Federal Rules of Civil Procedure.

1

Background

Plaintiff Vincent Riedel[2] brought this complaint on behalf of himself and all other massage therapists employed by the defendants, Acqua Ancien Bath New York LLC and Armando Prados (together, "Acqua"). (Complaint, ¶ 12). He alleged that Acqua had a policy of "causing [massage therapists] to not be on the clock for all hours worked," such as when they were giving each client a mandated tour of the spa. (Complaint, ¶ 26). The uncompensated time amounted to over six hours per week. (Complaint, ¶¶ 25-26, 29). Although massage therapists regularly worked more than ten hours per day, they were not paid a "spread of hours" premium, nor were they paid the proper overtime rate when they worked over forty hours in any one week. (Complaint, ¶¶ 27-28, 32; Memorandum of Law in Support of Joint Motion for Preliminary Approval of the Settlement, et cetera ("Joint Memo."), at 2). In addition, Mr. Riedel alleged that the putative class members were required to wear uniforms (which they presumably paid for themselves), and were not provided proper wage statements or wage notices, as required by the NYLL. (Complaint, ¶¶ 28, 31; Joint Memo. at 2). He sought to recover (1) "unpaid compensation

---

[2] In the documents filed in this action, the plaintiff's last name is spelled, variously, "Riedel" and "Reidel." I use the former spelling, as it is used on the complaint and on a "Consent to Sue" form Mr. Riedel filed with the court.

due to time-shaving (also referred to as unpaid 'gap time')"; (2) unpaid overtime; (3) unpaid spread of hours premiums; (4) misappropriated tips; (5) liquidated damages; (6) statutory penalties; (7) the cost of required uniforms; and (8) attorneys' fees and costs. (Complaint, ¶¶ 1-2).

The defendants consented to conditional collective action certification in March 2015, and notice of the action was mailed to potential collective members. (Stipulation and Order dated March 11, 2015 ("Conditional Certification Order")). By January 2016, fourteen opt-in plaintiffs had consented to join in the action. (Declaration of Alexander T. Coleman dated Jan. 14, 2016 ("Coleman Decl."), ¶ 3).

Meanwhile, discovery commenced in February 2015 (Order dated Feb. 2, 2015, at 1-2), and included "substantial document exchange[] and responses to interrogatories" (Coleman Decl., ¶ 4). The exchange of information made it clear that Acqua had not maintained complete records of the hours the plaintiffs worked, although the company disputes the plaintiffs' recollection of their hours, asserting that any overtime worked was insignificant. (Coleman Decl., ¶ 4). Discovery also revealed the existence of a total of approximately 130 similarly-situated individuals. (Coleman Decl., ¶ 4).

In July and August 2015, the parties met twice with mediator

Martin F. Scheinman to attempt to settle this dispute. (Coleman Decl., ¶ 5). At the conclusion of the mediation process, Mr. Scheinman proposed that the parties settle the claims for $485,000.00 (the "Settlement Amount"), including "attorneys' fees, expenses, and service awards, but [excluding] the employer's share of any payroll taxes typically associated with wage payments reported on an IRS Form W-2." (Coleman Decl., ¶ 6). The parties accepted the recommendation and thereafter drafted a settlement agreement. (Coleman Decl., ¶¶ 6-7; Settlement Agreement and Release dated Jan. 14, 2016 ("Settlement Agreement"), attached as Exh. A to Coleman Decl.).

According to the Settlement Agreement, attorneys' fees and attorneys' out-of-pocket expenses will be paid from the Settlement Amount. (Settlement Agreement, § 4.2; Coleman Decl., ¶ 10). Class counsel will apply for fees up to the amount of $161,666.67 -- or one-third of the total settlement amount -- in connection with the motion for final approval of the settlement. (Settlement Agreement, § 4.2). Subject to court approval, service awards for thirteen plaintiffs in the total amount of $22,100.00 -- comprising payments between a minimum of $100.00 and a maximum of $6000.00, depending on the services provided to the class and the collective -- will also come off the top of the Settlement Amount. (Settlement Agreement, § 4.1(E); Coleman Decl., ¶ 11).

4

Thereafter, each individual class member's share will be calculated in the following manner. First, each class member will receive one point for each week between May 1, 2012, and August 14, 2015, in which he or she worked as a massage therapist. (Settlement Agreement, §§ 1, 4.1(A); Coleman Decl., ¶ 12). Second, the remaining amount in the settlement fund will be divided by the sum of the total number of points accrued by class members plus any points that would have been accrued by individuals who opted out of the settlement. (Settlement Agreement, § 4.1(B); Coleman Decl., ¶ 12). Third, this quotient (referred to in the Settlement Agreement as the "Point Value") will be multiplied by a class member's points to compute that member's Individual Settlement Amount. (Settlement Agreement, §§ 4.1(B), (C); Coleman Decl., ¶ 12). One-half of each Individual Settlement Amount will be characterized as wages, and the employee's share of all required payroll taxes will be withheld from that amount; the other one-half will be characterized as liquidated damages and "will be treated as 1099 income."[3] (Settlement Agreement, § 4.4; Coleman Decl., ¶ 13).

The Settlement Agreement allows potential class members to

---

[3] Service award payments will also be classified as non-wage payments subject to 1099 reporting. (Settlement Agreement, § 4.4(B)).

opt-out by sending a postage pre-paid, signed statement to the Settlement Administrator within sixty days of the distribution of the notice informing class members of the terms of the settlement. (Settlement Agreement § 3.9(A), (B); Coleman Decl., ¶¶ 17-18).  If thirty-three percent or more of the putative class members exclude themselves from the settlement, the defendants may rescind the agreement within fourteen days of the close of the opt-out period. (Settlement Agreement, § 3.9(E); Coleman Decl., ¶ 19).  In addition, the Settlement Agreement outlines procedures allowing class members to object at the hearing on the fairness of the proposed settlement prior to final approval. (Settlement Agreement, § 3.10).

If the settlement receives final approval, checks will be sent to class members who have not opted out. (Settlement Agreement, § 4.1(H)(i); Coleman Decl., ¶ 14).  Each check will display language stating that, by endorsing the check, the class member agrees to join the FLSA collective action and releases all wage and hour claims that were or could have been brought in the litigation, whether based on the FLSA, NYLL, or any other rule or regulation. (Settlement Agreement, § 5.1(B)).  Class members will have six months from the date the checks are mailed to cash them. (Settlement Agreement, § 4.1(H)(ii); Coleman Decl., ¶ 15). Any funds remaining as of that date will be distributed to class

members on a pro rata basis.  (Settlement Agreement, § 4.1(H)(ii); Coleman Decl., ¶ 15).   Funds remaining after the second distribution will be donated to a charity of Acqua's choosing. (Settlement Agreement, § 4.1(H)(ii); Coleman Decl., ¶ 15).   Class members will release all NYLL claims for the period between May 1, 2012, and August 14, 2015, whether or not they cash their checks. (Settlement Agreement, § 5.1(A); Coleman Decl., ¶ 16).   Those who cash their checks will release their FLSA claims for the same period.  (Settlement Agreement, § 5.1(A); Coleman Decl., ¶ 16).

Discussion

A.   Certification of Rule 23 Settlement Class

The proposed Rule 23 class comprises all individuals who worked as massage therapists for Acqua between May 1, 2012, and August 14, 2015.  (Joint Memo. at 1).   The parties agree that, "for purposes of settlement only, . . . this class meets all of the requirements for Rule 23 class certification."  (Joint Memo. at 20).   However, even where the parties are willing "to stipulate to the facts necessary for the certification of the class for settlement purposes, the Court bears an independent responsibility to make a determination that every Rule 23 requirement is met." Farinella v. Paypal, Inc., 611 F. Supp. 2d 250, 260-61 (E.D.N.Y. 2009); see also Karvaly v. eBay, Inc., 245 F.R.D. 71, 78 (E.D.N.Y. 2007) (same).   The Supreme Court has observed that this

determination "focus[es] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 621 (1997). Thus, I must conduct a "rigorous analysis," General Telephone Co. v. Falcon, 457 U.S. 147, 161 (1982), first to evaluate whether the criteria of numerosity, commonality, typicality, and adequacy under Rule 23(a) are satisfied. Fed. R. Civ. P. 23(a); see also Farinella, 611 F. Supp. 2d at 261. If they are, before certifying of a class pursuant to Rule 23(b)(3), I must next determine that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

      1.   Rule 23(a)

          a.   Numerosity

Generally, "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Because, as noted, the parties assert that there are approximately 130 class members here (Coleman Decl., ¶ 4), this requirement is met.

b.   Commonality

Commonality is established where the claims share a common issue of law or fact, that is, where "the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiffs' claims as to that of the other members of the proposed class." Chambery v. Tuxedo Junction Inc., 10 F. Supp. 3d 415, 420 (W.D.N.Y. 2014) (quoting Dodge v. County of Orange, 208 F.R.D. 79, 88 (S.D.N.Y. 2002)). This normally imposes only a "minimal burden" because it does not require that "all issues must be identical as to each member, but [rather] . . . that plaintiffs identify some unifying thread among the members' claims that warrants class treatment." Karvaly, 245 F.R.D. at 81 (quoting Lewis Tree Service, Inc. v. Lucent Technologies Inc., 211 F.R.D. 228, 231 (S.D.N.Y. 2002), and Kamean v. Local 363, International Brotherhood of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y. 1986)).

Common issues of law and fact here include whether Acqua had a policy of "time-shaving" and of failing to pay massage therapists for hours worked over forty in one week and whether the class members actually worked over forty hours per week. "Courts have not hesitated to conditionally certify classes [under Rule 23] in similar circumstances." Chambery, 10 F. Supp. 3d at 420-21 (holding commonality established where common questions included "(1) whether Defendant had a policy of improperly classifying class

9

members as exempt employees for purposes of state law; (2) whether
Defendant required class members to perform their duties in a
similar manner; and (3) whether class members actually performed
work for defendant in excess of 40 hours per week"); see also
Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 175 (S.D.N.Y. 2014)
(commonality established where common questions were "(1) whether
defendants failed to pay overtime and (2) whether defendants
retained tips from their service employees"); Siler v. Landry's
Seafood House-North Carolina, Inc., No. 13 Civ. 587, 2014 WL
2945796, at *3 (S.D.N.Y. June 30, 2014) (commonality established
where common questions included "whether Defendants failed to pay
[] minimum wages, tips, and gratuities for work performed at
banquet events"); Ortiz v. Chop't Creative Salad Co., No. 13 Civ.
2541, 2014 WL 1378922, at *7 (S.D.N.Y. March 25, 2014) (commonality
established where common questions included "whether the
defendants: (a) violated the minimum wage requirement by taking an
unlawful tip credit; (b) violated the overtime pay rate, call-in
pay and spread-of-hours pay requirements; (c) deducted unlawfully
from the plaintiffs' wages the costs associated with purchasing
and maintaining bicycles required by the defendants to be used for
work; and (d) violated NYLL requiring them to provide wage
statements and wage and hour notices").

c.   Typicality

"'[S]imilar considerations animate analysis' of both [the commonality and typicality requirements]." Brown v. Kelly, 609 F.3d 467, 475 (2d Cir. 2010) (quoting Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (per curiam)). However, typicality ensures that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Lizondro-Garcia, 300 F.R.D. at 175 (alteration in original) (quoting Marisol A., 126 F.3d at 376). Typicality is established as long as "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Id. (quoting In re Flag Telecom Holdings, Ltd. Securities Litigation, 574 F.3d 29, 35 (2d Cir. 2009)). As the parties assert, the claims here "arise from the same alleged policy of not paying massage therapists for any hours worked over forty." (Joint Memo. at 22). This is sufficient. See, e.g., Long v. HSBC USA Inc., No. 14 Civ. 6233, 2015 WL 5444651, at *7 (S.D.N.Y. Sept. 11, 2015) (typicality requirement met where class members "were all employed by defendants[] to do similar work and . . . did not receive overtime pay under the same policy"); Lizondro-Garcia, 300 F.R.D. at 175 ("Plaintiffs satisfy the typicality requirement

. . . because they were employed by defendants in the same positions and subjected to the same overtime, spread-of-hours[,] and tipping practices as members of the proposed NYLL class.").

      d.   Adequacy

A representative party "fairly and adequately protect[s] the interests of the class," Fed. R. Civ. P. 23(a)(4), if "class counsel [is] qualified and able to conduct the proposed litigation, and [if] the class representatives [do] not have interests antagonistic to those of other class members," Lizondro-Garcia, 300 F.R.D. at 175-76 (quoting Fox v. Cheminova, Inc., 213 F.R.D. 113, 127 (E.D.N.Y. 2003)).  Both requirements are met here.

The plaintiff is represented by two firms: Borelli & Associates, P.L.L.C., and Lee Litigation Group, PLLC.  (Coleman Decl., ¶ 20).  Both firms have provided examples of recent wage-and-hour collective or class actions in which they have served as counsel.  (Coleman Decl., ¶ 20).  Moreover, as to Borrelli & Associates, the Honorable Frank Maas, U.S.M.J., recently found that the firm "has prosecuted over one thousand cases in state and federal court, the large majority of which are employment actions" and found that it could adequately represent the class.  Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc., No. 14 Civ. 2636, 2015 WL 4922961, at *5, 6 (S.D.N.Y. June 18, 2015). Similarly, the Honorable Ronald L. Ellis, U.S.M.J., found that Lee

Litigation Group "has acted as lead counsel in many wage and hour class and collective actions" and that the firm would adequately represent the interests of the classes in the case before him. Viafara v. MCIZ Corp., No. 12 Civ. 7452, 2014 WL 1777438, at *3 (S.D.N.Y. May 1, 2014).  Both firms are qualified to conduct this litigation -- indeed, Lee Litigation Group has represented the plaintiff since the action's inception; Borrelli & Associates since April 2015.

The class representative will also adequately represent class members.  Mr. Riedel, like the class members, was employed by the defendants as a massage therapist.  (Complaint, ¶ 23).  There is no evidence that he has interests antagonistic to those of the other class members.  See, e.g., Long, 2015 WL 5444651, at *8 (named plaintiffs adequate where they worked in same position as class members and no evidence of conflict of interest).[4]

---

[4] Courts have grafted onto Rule 23(a) an "ascertainability" requirement, which is satisfied if the members of the class can be identified based on objective, administratively feasible criteria. Lizondro-Garcia, 300 F.R.D. at 176 (quoting Fears v. Wilhelmina Model Agency, Inc., 02 Civ. 4911, 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003)).  There is no question that the requirement is met here, as the parties have already identified the 130 individuals who were employed by Acqua as massage therapists during the relevant period.  (Joint Memo. at 23).

2.   Rule 23(b)(3)

a.   Predominance

The predominance inquiry "is a more demanding criterion than the commonality inquiry." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).   This requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Id.   Here, "all [c]lass [m]embers are unified by common factual allegations that they were employed in the same job and were paid in the same manner during the same periods of time." (Joint Memo. at 24).   This suffices.   See, e.g., Brown, 609 F.3d at 484 ("[W]here plaintiffs were 'allegedly aggrieved by a single policy of the defendants,' and there is 'strong commonality of the violation and the harm,' this 'is precisely the type of situation for which the class action device is suited.'" (quoting In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 146 (2d Cir. 2001))); Lizondro-Garcia, 300 F.R.D. at 177 ("Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies 'are about the most perfect questions for class treatment.'" (quoting Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y.

14

2007))).

        b.   <u>Superiority</u>

     To determine whether a class action is superior to alternative methods of adjudication, Rule 23(b)(3) suggests analysis of four factors:

    (1) "class members' interests in individually controlling the prosecution of . . . separate actions";

    (2) "the extent and nature of any litigation . . . already begun by . . . class members";

    (3) the desirability of concentrating litigation in this forum; and

    (4) "the likely difficulties in maintaining a class action."

Fed. R. Civ. P. 23(b)(3)(A)-(D).

     The parties point out that no putative class member has brought an individual claim, and that none is likely to, given the relatively limited recovery available.  (Joint Memo. at 24).  In addition, litigating in the Southern District of New York makes sense because the putative class members were all employed in this district, and the corporate defendant is located here.  (Joint Memo. at 24; Complaint, ¶ 6).  In addition, "class adjudication as opposed to multiple individual actions . . . will conserve judicial resources and provide a fair and consistent outcome."  <u>Long</u>, 2015 WL 5444651, at *9; <u>see also</u> <u>Chambery</u>, 10 F. Supp. 3d at 421 ("The superiority requirement is met here because the

commencement of individual actions would be cost-prohibitive (because the potential recovery is far outweighed by the potential cost) and because the Defendant's headquarters are in this District, making this a desirable forum.").

B.   Certification of 29 U.S.C. § 216(b) Collective Action[5]

The FLSA does not require courts to certify a FLSA collective action; however, courts in this Circuit regularly "use their discretion to do so." Ortiz, 2014 WL 1378922, at *9. "The Second Circuit has endorsed a two-step method to certify FLSA collective actions." Agerbrink v. Model Service LLC, No. 14 Civ. 7841, 2016 WL 406385, at *1 (S.D.N.Y. Feb. 2, 2016). At the initial step, plaintiffs must "make a 'modest factual showing' that they and

---

[5] The parties did not originally present any argument as to certification of a collective action in their joint brief, although they ask for certification of a settlement class "under 29 U.S.C. § 216(b)" and discuss the collective action in the proposed notice. (Joint Memo. at 2; Notice of Proposed Class and Collective Action Settlement ("Proposed Notice"), attached as Exh. B to Coleman Decl., at 2). Moreover, at my request, the parties have supplied some clarification regarding the contours of the proposed collective. (Letter of C.K. Lee, Tara Toevs Carolan, and Alexander T. Coleman dated May 13, 2016 ("3/13/16 Letter")). Therefore, I will address the question of certification here. Of course, the advisability of the collective may also be addressed upon consideration of final approval. Cf. Ortiz, 2014 WL 1378922, at *10 (addressing first stage of collective action certification where FLSA claims discussed in proposed notice notwithstanding that parties planned to seek certification with final approval motion); but cf. Lizondro-Garcia, 300 F.R.D. at 180 n.4 (refraining from analyzing conditional certification of collective action because not required by 28 U.S.C. § 216(b) and plaintiffs did not request conditional certification).

potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" <u>Ortiz</u>, 2014 WL 1378922, at *9 (quoting <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 555 (2d Cir. 2010)). Subsequently, presumably on a fuller record, the court determines whether the opt-in plaintiffs are actually similarly situated to the named plaintiff. <u>Id.</u> "At this latter stage, 'district courts . . . typically look to the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment]."'" <u>Agerbrink</u>, 2016 WL 406385, at *1 (second alteration in original) (quoting <u>Zivali v. AT&T Mobility, LLC</u>, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011)).

The parties previously stipulated to conditional certification of a collective action and sent notice to prospective opt-in plaintiffs. (Conditional Certification Order). As noted, fourteen individuals filed forms indicating their desire to become a part of the collective action. (Coleman Decl., ¶ 3). Each opt-in plaintiff asserts either that he or she was employed as a massage therapist at the defendants' spa (Consent to Become Party Plaintiff forms, filed June 5, 2015), or that he or she was employed at the defendants' spa (without identifying the position

17

held) and was not "properly compensated for all hours worked or for overtime or spread of hours compensation in accordance with state and federal law" (Consent to Join Collective Action forms, filed Jan. 13, 2016).  On this record, then, it appears that the opt-in plaintiffs were subject to the same policies regarding time-keeping and pay as Mr. Riedel.

The question of whether they were all employed during the proper time period is a bit more complicated.  The FLSA settlement collective covers massage therapists employed at Acqua between May 1, 2012, and March 31, 2014.  (Joint Memo. at 2).  These dates reflect the approximate date that Acqua opened for business and the date that Mr. Riedel left his employment at the spa.  (3/13/16 Letter at 1).  The parties represent that, of the fourteen opt-in plaintiffs, twelve of them worked at the spa during the collective period.  (3/13/16 Letter at 2).  They therefore seek certification of a collective including only these twelve opt-in plaintiffs, and excluding putative opt-in plaintiffs Adia Gaines and Aidan Farhi, who therefore "would only be included in the Class Period (and not in the Collective Period)."[6]  (3/13/16 Letter at 1-2).   With those exclusions, it appears that twelve opt-in plaintiffs are in

---

[6] Under the terms of the proposed settlement, this exclusion has no effect on the amount these two class members can recover in damages.

18

fact similarly situated to the named plaintiff and were employed by the defendant during the relevant collective period, and the collective may be certified on that basis.

C.     Preliminary Approval of Proposed Settlement Agreement

Court approval (or approval by the U.S. Department of Labor) is required for settlements of FLSA claims.  Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015).  Similarly, Rule 23(e) requires court approval of settlement of class actions. Fed. R. Civ. P. 23(e).  There is a "strong judicial policy in favor of settlements, particularly in the class action context," and a settlement should be approved if it is "fair, adequate, and reasonable, and not a product of collusion."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d. Cir. 2005) (quoting In re PaineWebber Ltd. Partnerships Litigation, 147 F.3d 132, 138 (2d Cir. 1998), and Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000)).  That is, a court deciding whether to approve a settlement agreement must look at both substance and procedure, both "the settlement's terms and the negotiating process leading to settlement."[7]  Id.

---

[7] Because a collective action under the FLSA requires individuals to opt in before they are bound (rather than requiring them to opt out in order not to be bound, as in the Rule 23 class action context), "settlement of a collective action does not implicate the same Due Process concerns as the settlement of a class action," and therefore is subject to less searching scrutiny.

19

Approval proceeds in two steps.  First, preliminary approval -- which determines whether notice of the proposed settlement should be given to class members -- requires an "initial evaluation" of the fairness of the proposed settlement, and can be granted on the written submissions of the parties.  <u>Lizondro-Garcia</u>, 300 F.R.D. at 179 (quoting <u>Clark v. Ecolab, Inc.</u>, Nos. 07 Civ. 8623, 06 Civ. 5672, 04 Civ. 4488, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)) (collecting cases).  The second stage involves an evidentiary hearing to establish the fairness and adequacy of the settlement.  <u>See</u> <u>id.</u>

Where, as here, a settlement is negotiated at arm's length by capable counsel after meaningful discovery, it is presumed satisfactory.  <u>See</u> <u>Wal-Mart Stores</u>, 396 F.3d at 116.  Moreover, in this case, the parties enlisted the help of a neutral mediator, thus "reinforc[ing] that the Settlement Agreement is non-collusive."  <u>Hernandez v. Anjost Corp.</u>, No. 11 Civ. 1531, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013).  Finally, the named plaintiff, more than seven of the opt-in plaintiffs, and two potential class members "attended and actively participated in the mediation."  (Joint Memo. at 10).  On this record, the

---

<u>Lizondro-Garcia</u>, 300 F.R.D. at 179.  In most cases, a settlement that meets the standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under the FLSA.  <u>Id.</u>  I therefore focus on the standards of Rule 23.

negotiations resulting in the agreement appear to be procedurally sound.

Courts in this Circuit weigh nine factors to determine substantive fairness:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[8]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds by Goldberger v. Integrated Resources, Inc., 209 F.3d 43 (2d Cir. 2000); cf. Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (listing factors to determine fairness of FLSA settlement: range of possible recovery; extent to which settlement will avoid burdens and expenses of litigation; seriousness of litigation risks; whether agreement is product of arm's-length bargaining; possibility of fraud or collusion).

---

[8] These nine factors are not discrete areas of inquiry; rather, they overlap, and a number of them focus on the risks involved in litigation.

21

Initial evaluation of the Grinnell factors indicates that the settlement is fair, adequate, and reasonable.  It will avoid additional expense and delay consequent to motion practice and a fact-intensive trial (Joint Memo. at 15), and will ensure recovery for the plaintiffs rather than requiring them to face the inherent uncertainty of litigation.  See, e.g., Lizondro-Garcia, 300 F.R.D. at 180 ("[T]he [settlement] award compensates plaintiffs almost immediately and removes the uncertainty that litigation necessarily entails."); Long, 2015 WL 5444651, at *3 (first Grinnell factor weighs in favor of settlement where, as here, defendants would dispute liability and damages owed); Ortiz, 2014 WL 1378922, at *12 (noting expense and delay attendant to additional discovery, motion practice, and trial).  Although it is premature to evaluate the reaction of the class to the settlement (as class notice has not been disseminated), it is worth noting again that the named plaintiff, a number of the opt-in plaintiffs, and two putative class members participated in the mediation and presumably approve of the settlement.  (Joint Memo. at 10).  The parties have exchanged sufficient discovery -- including "substantial document exchange" and interrogatory responses (Coleman Decl., ¶ 4) -- to "enable counsel to ascertain the strengths and weaknesses of the plaintiffs' claims prior to settling."  Ortiz, 2014 WL 1378922, at *12.  The parties recognize

22

the risk of establishing liability, including the liability of the individual defendant, and damages, which the defendants vigorously dispute. (Joint Memo. at 15, 17; Coleman Decl., ¶ 4). Although the plaintiffs have calculated their likely damages from off-the-clock time -- which accounts for the bulk of their damages -- at an amount significantly higher than the $485,000 Settlement Amount, they "do not have records, or recollections, that would definitively establish [the] days and hours they worked." (Joint Memo. at 18). The defendants, for their part, dispute that any off-the-clock time was worked and argue that, if it was, it was de minimis. (Joint Memo. at 18-19; Coleman Decl, ¶ 4). In light of "the uncertainties of law and fact in [this] particular case and the concomitant risks and costs inherent in taking [this] litigation to completion," Long, 2015 WL 5444651, at *5 (quoting Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005)), this settlement appears to fall within the range of reasonableness.

For these reasons, I preliminarily approve the settlement agreement.

D.   Class Counsel and Claims Administrator

Rule 23(g) outlines factors relevant to appointing class counsel: (1) the work performed in identifying or investigating potential claims; (2) counsel's experience in handling similar, and similarly complex, litigation; (3) counsel's knowledge of the

relevant law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In addition, the court must be satisfied that the attorneys will fairly and adequately represent the class. Fed. R. Civ. P. 23(g)(1)(B), (g)(4).

Lee Litigation Group, which filed the complaint on behalf of Mr. Riedel and the putative class and collective, identified a number of claims; subsequent investigation (through discovery) indicated that the most valuable claims were for off-the-clock time and improper tip distribution. (Joint Memo. at 18). As discussed above, both Borelli & Associates and Lee Litigation Group have significant experience handling wage and hour class and collective actions. There is little question, therefore, that they are familiar with the applicable law. Finally, they have already expended significant resources in the discovery process and in negotiating the settlement agreement. (Joint Memo. at 14; Coleman Decl., ¶¶ 4-5). Accordingly, both firms (appearing by C.K. Lee and Angela Kwon of Lee Litigation Group and Alexander T. Coleman of Borrelli & Associates (Joint Memo. at 2)) are appointed class counsel.

The parties seek appointment of Rust Consulting, Inc., as the claims administrator. The firm has recently been appointed as claims administrator in two class actions in this district. See

<u>Anwar v. Fairfield Greenwich Ltd.</u>, No. 09 Civ. 118, 2015 WL 10793430, at *2 (S.D.N.Y. Aug. 13, 2015); <u>Behzadi v. International Creative Management Partners, LLC</u>, No. 14 Civ. 4382, 2015 WL 4210906, at *1 (S.D.N.Y. July 9, 2015).   Rust Consulting is therefore appointed as the claims administrator for this case, with responsibilities outlined in the Settlement Agreement. (Settlement Agreement, § 3.3).

D.   <u>Proposed Notice and Schedule</u>

The Second Circuit has observed that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.   There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements."   <u>Wal-Mart</u>, 396 F.3d at 113-14 (internal citations omitted).   Nevertheless, Rule 23(c)(2)(B) sets out certain information that must be included in the notice for a Rule 23(b)(3) class like this one.   I have reviewed the proposed notice, and it satisfies most of those requirements.   However, notably absent is the requirement of Rule 23(c)(2)(B)(iv) -- "that a class member may enter an appearance through an attorney if the member so desires."   Also, the notice could make clearer that complying with the opt-out provisions will automatically result in exclusion from the class -- that is, that no discretion will be exercised by

25

the Court or by counsel as to the exclusion of those who properly request it.  Fed. R. Civ. P. 23(c)(2)(B)(v); see also Lizondro-Garcia, 300 F.R.D. at 181 (requiring modification of class notice "to add language informing recipients that they may enter an appearance through an attorney and that the Court will exclude any member of the class who requests exclusion").  These omissions shall be remedied in the following manner:

> (1) In the second paragraph on the first page of the notice, the sentence beginning, "If you have any questions regarding this notice, or questions concerning the calculation of your share of the Settlement Fund, contact Class and Collective Counsel . . . ," shall be modified to read "If you have any questions regarding this notice, or questions concerning the calculation of your share of the Settlement Fund, you may contact Class and Collective Counsel . . . ."

> (2) Immediately after the recitation of the contact information for counsel from Lee Litigation Group and Borrelli & Associates, the following sentence shall be added:  "You may also retain counsel of your own choosing to represent you in this action."

> (3) In the section titled "What Are Your Options," as part of the first subsection, the following sentence shall be added: "You may also retain counsel of your own choosing to represent you in this action."

> (4) In the section titled "What Are Your Options," as part of the second subsection, the following sentence shall be added: "Any potential class member who follows the opt-out procedure will be excluded from the class."

In addition, some ministerial modifications are in order. All references to the Honorable Analisa Torres, U.S.D.J., shall be replaced by references to Judge James C. Francis IV.  The funding

26

dates in the section titled "What Are the Terms of the Settlement Agreement" shall be updated as necessary.

Notice shall be disseminated via First Class U.S. Mail within forty-five days of the date of this Order, as set out in the Settlement Agreement.  (Settlement Agreement, § 3.5).  Putative class members shall have sixty days from the date of the initial mailing of the notice to file opt-out statements or to become objectors.  (Settlement Agreement, §§ 3.7(B), 3.9(B), 3.10(A)).  The Motion for Final Approval shall be filed thirty days after the expiration of the opt-out period.  The fairness hearing shall be held at 9:30 a.m. on October 26, 2016, in courtroom 18D at the United States Courthouse, 500 Pearl Street, New York, New York, 10007.

Conclusion

For the foregoing reasons, the parties' Joint Motion for Preliminary Approval of the Settlement, Certification of Settlement Class[es], Appointment of Class Counsel [and Claims Administrator], and Approval of Proposed Notice of Settlement and Class Action Settlement Procedure (Docket no. 56) is granted with the modifications outlined above.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       May 19, 2016

Copies transmitted this date:

C.K. Lee, Esq.
Angela Kwon, Esq.
Lee Litigation Group, PLLC
30 E. 39th St., 2nd Floor
New York, NY 10016

Michael J. Borrelli, Esq.
Alexander T. Coleman, Esq.
Law Offices of Borrelli & Associates
1010 Northern Blvd., Suite 328
Great Neck, NY 11021

Laurent S. Drogin, Esq.
Maxwell D. Rosenthal, Esq.
Tara T. Carolan, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018